# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| J.M., A MINOR, by and through his parent, M.M. | : |
| | : |
| | : |
| Plaintiff, | :          CASE NO. 12-cv-3882 |
| | : |
| v. | : |
| | : |
| NOBEL LEARNING COMMUNITIES, INC., dba Chesterbrook Academy | : |
| | : |
| | : |
| Defendant. | : |
| | : |

## ORDER

AND NOW, this _____ day of _____, 2012, upon consideration of

Defendant's Motion to Dismiss, the Memorandum of Law in Support thereof, and all responses

thereto, it is hereby ORDERED as follows:

1.  The Motion is GRANTED;

2.  The Complaint is hereby DISMISSED WITH PREJUDICE.


_____
Pratter, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| J.M., A MINOR, by and through his parent, M.M. | : | |
| | : | |
| Plaintiff, | : | CASE NO. 12-cv-3882 |
| | : | |
| v. | : | |
| | : | |
| NOBEL LEARNING COMMUNITIES, INC., dba Chesterbrook Academy | : | |
| | : | |
| Defendant. | : | |
| | : | |

## DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

Defendant Nobel Learning Communities, Inc., dba Chesterbrook Academy moves for the dismissal of the Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). The grounds supporting Defendant's Motion are set forth in the accompanying Memorandum of Law.

HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER

By: /s/ Wendy Beetlestone
       Wendy Beetlestone (I.D. No. 71455)
       Alva C. Mather (I.D. No. 93881)
       wbeetlestone@hangley.com
       amather@hangley.com
       One Logan Square, 27th Floor
       Philadelphia, Pennsylvania  19103
       Telephone:  (215) 568-6200
       Facsimile:  (215) 568-0300

*Attorneys for Defendant*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| J.M., A MINOR, by and through his parent, M.M. | : <br> : <br> : |
| Plaintiff, | : <br> :     CASE NO. 12-cv-3882 <br> : |
| v. | : <br> : <br> : |
| NOBEL LEARNING COMMUNITIES, INC., dba Chesterbrook Academy | : <br> : <br> : |
| Defendant. | : <br> : |

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>DEFENDANT'S MOTION TO DISMISS THE COMPLAINT</u>

HANGLEY ARONCHICK SEGAL PUDLIN
& SCHILLER

By:  Wendy Beetlestone (I.D. No. 71455)
      Alva C. Mather (I.D. No. 93881)
      wbeetlestone@hangley.com
      amather@hangley.com
      One Logan Square, 27th Floor
      Philadelphia, Pennsylvania  19103
      Telephone:  (215) 568-6200
      Facsimile:  (215) 568-0300

*Attorneys for Defendant*

# TABLE OF CONTENTS

I.     BACKGROUND ..................................................................................... 1

II.    STANDARD OF REVIEW ..................................................................... 4

III.   ARGUMENT ......................................................................................... 6

    A.     Plaintiff's Title III ADA Claim Must Be Dismissed In Its Entirety For Failure to State a Claim Upon Which Relief Can Be Granted ............................... 6

    B.     Count II of the Complaint Must Be Dismissed In Its Entirety For Failure to State a Claim Under Section 504 of the Rehabilitation Act ................. 8

         1.     NLCI is Not a Direct Recipient of Federal Financial Assistance .............. 8

         2.     NLCI is Not an Indirect Recipient of Federal Funds ................................. 9

    C.     Count III of the Complaint Which Seeks Attorneys Fees and Costs is Not a Separate Cause of Action ................................................................... 12

    D.     All Claims Purportedly on Behalf of M.M. Individually Must Be Dismissed For Failure to State a Claim ................................................................. 13

         1.     M.M. Should Be Dismissed For Failure to Identify Herself in the Caption to the Complaint as Required by Federal Rule of Civil Procedure 10(a) ...................................................................................... 13

         2.     Plaintiff Has Failed to State a Claim Under Either the ADA or the Rehabilitation Act ................................................................................... 14

               a)     *Title III of the Americans with Disabilities Act* ............................ 14

               b)     *Section 504 of the Rehabilitation Act* ............................................. 17

    E.     Plaintiff's Request for Punitive Damages under Title III of the ADA and the Rehabilitation Act Should be Dismissed ........................................ 18

    F.     Title II of the ADA Does Not Apply to NLCI .................................................... 18

IV.   CONCLUSION .................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.W. v. Jersey City Public School*,
   486 F.3d 791 (3d Cir. 2007) (en banc)....................................................................8

*Allen v. National R.R. Passenger Corp.*,
   No. Civ. A.03-CV-3497, 2004 WL 2830629 (E.D. Pa. Dec. 7, 2004) ...................13

*Argueta v. U.S. Immigration and Customs Enforcement*,
   643 F.3d 60 (3d Cir. 2011)..............................................................................5, 9, 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................................4, 5

*Barnes v. Gorman*,
   536 U.S. 181 (2002)............................................................................................18

*Bascle v. Shadrall Riverside Market, LLC*,
   Civ. A. No. 11-2848, 2012 WL 1565301 (E.D. La. Apr. 30, 2012) ........................4

*Bowers v. NCAA*,
   346 F.3d 402 (3d Cir. 2003)..................................................................................6

*Erdman v. Nationwide Ins. Co.*,
   582 F.3d 500 (3d Cir. 2009)................................................................................17

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009)........................................................................5, 8, 14

*In re Allegheny Health*,
   321 B.R. 776 (Bankr. W.D. Pa. 2005) ..............................................................7, 19

*J., et al. v. School Dist. of Philadelphia*,
   Civ. A. No. 06-3886, 2007 WL 1221216 (E.D. Pa. Apr. 25, 2007) ...................2, 12

*Klingler v. Yamaha Motor Corp.*,
   738 F. Supp. 898 (E.D. Pa. 1990) .......................................................................13

*Smith v. NCAA*,
   266 F.3d 152 (3d Cir. 2001)................................................................................12

*St. Johnsbury Acad. v. D.H.*,
   240 F.3d 163 (2d Cir. 2001)............................................................................2, 12

*Tunstall v. Office of Judicial Support*,
   820 F. 2d 631 (3d Cir. 1987)...........................................................................4, 12

*U.S. Department of Transp. v. Paralyzed Veterans of America*,
    477 U.S. 597 (1986) ............................................................................................. 9, 10, 11

*U.S. v. Nobel Learning Communities, Inc.*,
    676 F. Supp. 2d 379 (E.D. Pa. 2009) .......................................................... 14, 15, 16

*U.S. v. Nobel Learning Communities, Inc.*,
    Civ. A. No. 09-1818, 2010 WL 1047730 (E.D. Pa. Mar. 19, 2010) ...................... 16

*Ullmo v. Gilmour Acad.*,
    273 F.3d 671 (6th Cir. 2001) .................................................................................. 2, 12

*W. Penn Allegheny Health Sys. v. UPMC*,
    627 F.3d 85 (3d Cir. 2010) ......................................................................................... 5

**STATUTES**

29 U.S.C. § 794 ........................................................................................................... passim

41 U.S.C. § 12131(1) ......................................................................................................... 19

42 U.S.C. § 2000a-3(a) ......................................................................................................... 6

42 U.S.C. § 12132 .............................................................................................................. 18

42 U.S.C. §§ 12181-12189 ......................................................................................... passim

42 U.S.C. § 12205 .......................................................................................................... 4, 12

**OTHER AUTHORITIES**

34 C.F.R. § 106.2(h) .......................................................................................................... 10

34 C.F.R. § 300.800 ........................................................................................................... 10

34 C.F.R. § 300.812 ........................................................................................................... 10

34 C.F.R. § 300.815 ........................................................................................................... 10

22 Pa. Code § 112.21 ......................................................................................................... 11

22 Pa. Code § 112.23 ......................................................................................................... 11

22 Pa. Code § 112.29 ......................................................................................................... 11

Federal Rules of Civil Procedure 10(a) ............................................................................. 13

Federal Rules of Civil Procedure 12(b)(6) .......................................................................... 1

Defendant Nobel Learning Communities, Inc., dba Chesterbrook Academy ("NLCI"), respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

Plaintiff is a former student at an NLCI school who contends that NLCI disenrolled him because he was disabled. His Complaint, brought on his behalf by his mother, contains three counts none of which is viable. Count I, which purports to set forth a claim under Title III of the Americans with Disabilities Act ("ADA"), fails as a matter of law because the remedy it seeks – money damages and not injunctive relief – renders the claim legally unfeasible. Count II, brought pursuant to Section 504 of the Rehabilitation Act, must fail because NCLI is neither a direct nor an indirect recipient of federal funds, a necessary component of Section 504's prima facie case. Finally, Count III is simply a request for attorneys' fees and costs which is not an independent cause of action.

Although the caption of the Complaint includes only the student Plaintiff, the body of the Complaint contains language suggesting that his mother is seeking to make claims on her own behalf. To the extent that is so, any such claims must be dismissed because: (1) she is not, as required by the Federal Rules of Civil Procedure, named in the caption; (2) her allegations do not support a claim for associational discrimination under the ADA; and (3) she herself is not disabled and, thus, cannot prevail under a claim brought pursuant to Section 504.

Accordingly, the Complaint must be dismissed in its entirety.

## I.    BACKGROUND

Plaintiff, who is referred to throughout the Complaint by his initials only – J.M. – was a preschool student at one of NLCI's schools in Bucks County, Pennsylvania, which is known as the Chesterbrook Chalfont school. Compl. ¶¶ 8, 13. J.M.'s mother, who is also referred to in the

Complaint by her initials only – M.M., was a teacher at the school and had enrolled him there when he was three months old. *Id.* ¶ 15.  In 2010, just prior to him moving into the three year old classroom, J.M.'s father died suddenly disrupting his family life considerably. *Id.* ¶ 16.  J.M. displayed troubling behavior at home, *id.*, which spilled over into school where he became sensitive, impulsive and aggressive. *Id.* ¶ 17.

M.M. contacted the Bucks County Intermediate Unit ("BCIU") to seek an evaluation of her son to determine whether he was a child with special educational needs under the Individuals with Disabilities Education Act ("IDEA"). *Id.* ¶ 19.[1]  NLCI worked with her through the process of evaluation.  J.M.'s mother talked to her supervisor about BCIU's evaluation of J.M.. *Id.* ¶ 21.  Then, when the BCIU requested an in-class observation of J.M., NLCI co-operated with the request, allowing BCIU personnel into the school to observe J.M.'s behavior. *Id.* ¶¶ 22-23.

At the conclusion of the evaluation process, the BCIU allegedly determined that J.M. was eligible for special education services. *Id.* ¶ 27.  M.M. told her supervisors about the determination. *Id.* ¶ 23.  The Complaint then alleges that NLCI instructed M.M. that her son could no longer remain at Chesterbrook Chalfont. *Id.* ¶ 24.  Nevertheless, when, at the start of the 2011-2012 school year, M.M. asked that her son return to an NLCI school, NLCI admitted J.M. on a trial placement at another of its Bucks County schools – Chesterbrook Newtown. *Id.* ¶ 28.  However, at the conclusion of the trial period NCLI did not agree to readmit J.M., *id.* ¶¶ 33-34, and his mother moved J.M. out of the NLCI system to another school. *Id.* ¶ 39.

The caption of the Complaint describes the Plaintiff in this matter as "J.M., a minor, by and through his mother, M.M."  M.M. is not named in the caption as a separate plaintiff.

---

[1] As a private provider of education, NLCI is not subject to the IDEA which requires a <u>public</u> school to provide each of its special needs students with a free appropriate <u>public</u> education. *J., et al. v. School Dist. of Philadelphia*, Civ.A. No. 06-3886, 2007 WL 1221216, at *3-4 (E.D. Pa. Apr. 25, 2007); *see also St. Johnsbury Acad. v. D.H.*, 240 F.3d 163 (2d Cir. 2001); *Ullmo v. Gilmour Acad.*, 273 F.3d 671 (6th Cir. 2001).

Nevertheless, certain paragraphs in the Complaint suggest that she is in fact attempting to bring claims against NLCI on her own behalf.  For example, paragraph 3 of the Complaint describes the plaintiff as "the Parent and natural guardian of the minor, J.M. . . . on J.M.'s behalf . . . " but also suggests that M.M. intends to bring claims "in her own right."  *Id.* ¶ 3 (emphasis added).  Scattered throughout the Complaint are also allegations that appear to be included to support claims brought by M.M. individually.  More specifically, she contends that her superiors stopped speaking to her, she was written up for calling in sick and warned that she would not be permitted leave to deal with the child care needs of her son.  *Id.* ¶ 36.  As a result, M.M. alleges that she was "forced to resign" from NLCI, *id.* ¶ 37, in retaliation for advocating on behalf of her son, *id.* ¶ 38, which resulted in the loss of child care for her son, *id.* ¶ 43, and income for herself. *Id.* ¶ 45.  M.M. further alleges that she lost, or was denied, "the opportunity to select, participate in, and benefit from education at NLCI.  *Id.* ¶ 43.

The Complaint explicitly asserts two causes of action both of which arise from the contention that J.M. is disabled as defined by the ADA, the Rehabilitation Act, and the IDEA. The first – Count I – is brought pursuant to Title III of the ADA, 42 U.S.C. § 12181 *et seq.*. Count I alleges that NLCI discriminated against both J.M. and his mother by:  (a) denying them the opportunity to participate in NLCI's programs and services; (b) screening J.M. from participation in the program on the basis of his alleged disabled status; (c) retaliating against both J.M. and his mother as a response to her advocacy on his behalf; and (d) excluding J.M.'s mother from NLCI because of her relationship with a person with an alleged disability.  *Id.* ¶ 46.

Count II purports to state a cause of action under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, for unlawful discrimination on the basis of J.M.'s allegedly disability.   The contentions in support of this claim are that:  (a) J.M. was excluded from NLCI schools after

being identified as an individual with a disability and was not provided with the modifications and accommodations needed to support his continued attendance; (b) that NLCI refused to admit J.M. based on his disabled status; and (c) that NLCI retaliated against M.M. for her advocacy on her son's behalf. *Id*. ¶ 48.

In both Counts I and II, Plaintiff's request for relief is limited to monetary damages, specifically "compensatory damages, including damages for pain and suffering, and punitive damages, in an appropriate amount." *Id*. ¶¶ 8, 9. Nowhere in the Complaint is there a request for injunctive or other preventative relief.

Finally, Count III entitled "Attorney's Fees and Costs", although styled as a separate count, does not constitute a separate cause of action given that it is in fact simply a request for attorney's fees and costs of suit should Plaintiff prevail on either of the previous two substantive counts. *Tunstall v. Office of Judicial Support,* 820 F. 2d 631, 633 (3d Cir. 1987) (recognizing that attorneys fees statutes do "not create an independent federal cause of action" but are "merely intended to complement the various acts which do create federal cause of action for the violation of federal civil rights.") (citing *Moor v. County of Alameda,* 411 U.S. 693, 702 (1973)); s*ee also, Bascle v. Shadrall Riverside Market, LLC*, Civ. A. No. 11-2848, 2012 WL 1565301, at *2 (E.D. La. Apr. 30, 2012) (holding that a request for attorney's fees pursuant to 42 U.S.C. § 12205 "by itself, does not create an independent cause of action").

## II.   STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops

short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

The Third Circuit requires that a district court conduct a two-part analysis when presented with a motion to dismiss. "First, the factual and legal elements of a claim should be separated." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). This is because "the basic principle that a court must accept all allegations as true is inapplicable to either legal conclusions or '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Argueta v. U.S. Immigration and Customs Enforcement*, 643 F.3d 60, 72 (3d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 663) ("[T]he pleading must include more than an unadorned, the-defendant-unlawfully-harmed-me accusation, [or] labels and conclusions . . . ." (internal quotation marks omitted)). Second, after disregarding any legal conclusions, the court should determine whether the well-pleaded facts alleged in the complaint "are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 663). "This 'plausibility' standard . . . demand[s] more than a sheer possibility that the defendant acted unlawfully. Therefore, a complaint pleading facts that are merely consistent with liability is insufficient." *Argueta*, 643 F.3d at 72-73; *see also W. Penn Allegheny Health Sys. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) ("In determining whether a complaint is sufficient, courts should disregard the complaint's legal conclusions and determine whether the remaining factual allegations suggest that the plaintiff has a plausible – as opposed to merely conceivable – claim for relief.").

Keeping these principles it mind, it is clear that the Complaint fails to state a claim upon which relief can be granted and should therefore be dismissed in its entirety.

III.   **ARGUMENT**

   A.   **Plaintiff's Title III ADA Claim Must Be Dismissed In Its Entirety For Failure to State a Claim Upon Which Relief Can Be Granted**

In Count I of the Complaint, Plaintiff requests the following relief for NLCI's alleged violation of Title III of the Americans with Disabilities Act: "compensatory damages, including damages for pain and suffering, punitive damages, in an appropriate amount." Compl. ¶ 8. In other words, Plaintiff's only requested recovery is for monetary damages, rather than for preventative relief. The remedy requested is not legally feasible thus requiring this Court to dismiss Count I of the Complaint in its entirety for failure to state a claim upon which relief can be granted.

Title III of the ADA prohibits discrimination on the basis of disability by certain private entities, including private schools. *See* 42 U.S.C. §§ 12181 – 12189. In fashioning recoveries for violations of Title III, Congress expressly limited the available remedies to preventative relief, such as injunctions and restraining orders. 42 U.S.C. § 12188(a)(1); 42 U.S.C. § 2000a-3(a). By extension, the Third Circuit has explicitly held that "Title III defendants cannot be liable for money damages." *Bowers v. NCAA*, 346 F.3d 402, 433 (3d Cir. 2003). Therefore, Plaintiff cannot recover the relief he is seeking in Count I and this claim should be dismissed.

When confronted with the same situation – namely, a request for solely monetary recovery under Title III of the ADA – courts have determined that it is appropriate to dismiss a Title III claim in its entirety as a plaintiff cannot legally obtain the relief he or she is requesting even if able to prove discrimination. For example, in *In re Allegheny Health, Education & Research Foundation*, a disabled student filed proofs of claim in the bankruptcy proceeding of her medical school arguing that the school failed to accommodate her learning disability. 321 B.R. 776, 783 (Bankr. W.D. Pa. 2005). In pursuing her claim, plaintiff sought only monetary

relief in the form of compensatory and punitive damages, lost pay, attorney's fees and costs, and payment for her student loans. *Id.* at 784. In assessing her claim under Title III of the ADA, the Court observed that "only preventative relief may be recovered by a private plaintiff under Title III of the ADA" and therefore because "she seeks relief with respect to each of her claims that is not preventative in nature – . . . [plaintiff] ***as a matter of law***, cannot prevail against the [defendant] under Title III of the ADA." *Id.* at 800 (emphasis added). The Court, therefore, held that the defendant "is entitled to immediate judgment against [plaintiff] on her ADA claim. . . ." *Id.* Similarly in *Thompson v. Dover Downs, Inc.*, the United States District Court for the District of Delaware granted defendant's motion to dismiss after concluding that as a matter of law plaintiff could not prevail on her request for monetary damages pursuant to Title III of the ADA. No. 02-1360-MPT, 2003 WL 22309082 (D. Del. Oct. 6, 2003). *Thompson* involved a confrontation between the plaintiff and security personnel at the Dover Downs casino. Plaintiff filed a suit against the casino pursuant to Title III of the ADA seeking $500,000 in punitive damages and letters of apology from Dover Downs and the security guards. *Id.* at *1. After concluding that "Title III of the ADA limits the remedy of a private claim to injunctive relief" the court dismissed plaintiff's complaint holding that "[e]ven if plaintiff could prove discrimination, the remedy demanded is not legally feasible." *Id.* at *3.

  The same reasoning applies here. Plaintiff's requested relief is limited to the recovery of compensatory and punitive damages and does not, in any regard, request injunctive or other preventative relief. Accordingly, Plaintiff cannot, as a matter of law, obtain the relief demanded and his claim under Count I of the Complaint should be dismissed in its entirety.

**B.     Count II of the Complaint Must Be Dismissed In Its Entirety For Failure to State a Claim Under Section 504 of the Rehabilitation Act**

Plaintiff's Rehabilitation Act claim also fails because the allegations in the Complaint do not meet at least one of the elements of a Section 504 prima facie case.  To survive a motion to dismiss on his Section 504, Plaintiff must allege at a minimum that:  (1) he is disabled as defined by the Rehabilitation Act; (2) he is "otherwise qualified" to participate in school activities; (3) the school receives "federal financial assistance;" and (4) he was excluded from participation in, denied the benefits of, or subject to discrimination at, the school.  *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 804 (3d Cir. 2007) (en banc).  Here, Plaintiff's Rehabilitation Act claim must be dismissed because Plaintiff has failed to allege any facts – nor could he – to support his conclusory statements that NLCI receives federal financial assistance thus subjecting it to liability under the Rehabilitation Act.

**1.     NLCI is Not a Direct Recipient of Federal Financial Assistance**

As detailed above, when presented with a motion to dismiss the Court must engage in a two-part analysis.  First, it must separate the factual and legal elements of the claim to determine whether the plaintiff has alleged anything beyond legal conclusions or threadbare recitals of the elements of a cause of action.  *Fowler*, 578 F.3d at 210.  Such a review in this context reveals that Plaintiff has not made *any* viable factual assertions to support its claim that NLCI receives federal financial assistance.

The Complaint alleges in four places that NLCI's receives federal financial assistance:

> First, in paragraph 4, Plaintiff asserts "NLCI dba Chesterbrook Chalfont and Chesterbrook Newtown is a recipient of federal funds and subject to Section 504 of the Rehabilitation Act . . . ."  Compl. ¶ 4.

> Then, in paragraph 6, Plaintiff states that "Section 504 specifically applies to private schools that receive federal financial assistance." *Id*. ¶ 6.

In paragraph 11 of the Complaint, Plaintiff contends, with no supporting factual basis, that "Chesterbrook Chalfont receives 'fair share' supports under the IDEA and Pennsylvania Law (22 Pa. Code § 112.29) through the Bucks County Intermediate Unit . . . . which is, in part, federally funded." *Id.* ¶ 11.

Finally, in paragraph 47 Plaintiff again asserts that "NLCI is a recipient of Federal Funds." *Id.* ¶ 47.

These four paragraphs, the only allegations in the Complaint contending that NLCI receives federal funds, are threadbare, conclusory and provide no detail. Thus, they are wholly insufficient to survive the present motion as "the basic principle that a court must accept all allegations as true is inapplicable to either legal conclusions or '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Argueta,* 643 F.3d at 72 (quoting *Iqbal*, 556 U.S. at 678).

2.      NLCI is Not an Indirect Recipient of Federal Funds

Plaintiff's assertion that NLCI is an indirect recipient of federal funds as a result of NLCI's alleged receipt of "fair share" financial support from the BCIU, does not save his claim. Compl. ¶ 11. The reach of Section 504 is limited to protecting against discrimination those handicapped persons who are in a program or activity which receives federal financial assistance. By limiting the scope of Section 504 to only those entities which "receive" federal funds, Congress "sought to impose Section 504 coverage as a form of contractual cost of the recipient's agreement to accept the federal funds." *U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 605 (1986). In other words: "Congress apparently determined that it would require contractors and grantees to bear the costs of providing employment for the handicapped as a *quid pro quo* for the receipt of federal funds." *Id.* (quoting *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 633 n.13 (1984)).

9

Under the federal regulations implementing Section 504, a "recipient" of federal financial assistance is defined as "any public or private agency, institution or organization . . . to whom Federal financial assistance is extended directly or through another recipient and which operations an educational program or activity which receives or benefits from such assistance. . . ." 34 C.F.R. § 106.2(h).  If it is clear that an entity has received funds directly then its status as a 'recipient' under Section 504 is established.  However, if the entity receives the funds indirectly further analysis is required to determine whether the entity is a 'recipient' for purposes of Section 504 liability.  In this regard, the United States Supreme Court has held that the appropriate inquiry is whether the entity is "in a position to accept or reject [the obligations of Section 504] as part of the decision whether or not to 'receive' federal funds."  *Paralyzed Veterans*, 477 US at 606.  In other words, the first question is whether the entity has any authority to control whether or not funds are received.  Here, if Plaintiff is alleging that NLCI is subject to Section 504 liability as a result of its benefiting from the BCIU's receipt of federal funds, then the operative inquiry is whether NLCI has any ability to control whether to accept or reject any "fair share" funds spent by the BCIU.  A review of the statutory and code provisions reveals that it does not.

Under the IDEA the federal government provides grants directly to States to assist States in providing special education and related services to disabled preschool age children.  34 C.F.R. § 300.800.  States in turn do two things with this funding:  (1) they reserve some for administrative and other State-level activities, 34 C.F.R. § 300.812; and (2) they distribute the remainder in subgrants to local educational agencies responsible for providing education to children aged three to five years.  34 C.F.R. § 300.815.  In Pennsylvania, Intermediate Units ("IU") such as the BCIU are "designated as the responsible public agencies for providing

services and the assignment of personnel to provide auxiliary services to children in the nonpublic schools within the geographic boundaries of the intermediate units." 22 Pa. Code § 112.21. The IU fulfills this duty by providing services directly to disabled students grades K-12 at whatever nonpublic school such students might attend. 22 Pa. Code § 112.23. In order to support the work of the IU, funding is allocated directly from the Commonwealth to each IU based on a simple calculation of the number of eligible students in nonpublic schools within the IU's geographic boundaries. 22 Pa. Code § 112.29. From there, it is the sole responsibility of each IU to establish a program of services, *id*. § 112.24–.25, provide such services to each student, *id.*, and finally to budget and account for its activities. *Id.* § 112.31.

As the foregoing recitation makes clear, NLCI has no authority or control over whether the BCIU receives funds from the federal government or how it spends the money. Furthermore, the BCIU itself (within the confines of the statutory authority pursuant to which it receives the funds) retains complete control over how it chooses to spend the money it receives to support the eligible students within its boundaries. Therefore, as a matter of law, NLCI itself is not a "recipient" of federal funds under the Rehabilitation Act and, thus, Plaintiff cannot meet an essential element of his Section 504 claim which must be dismissed.

Even if Plaintiff were to argue that NLCI is subject to Section 504 of the Rehabilitation Act because it receives an inchoate benefit as a result of the provision of IU services to its students, this argument must fail because the United States Supreme Court has made explicitly clear that only recipients, not beneficiaries, are subject to liability under the Rehabilitation Act. *Paralyzed Veterans*, 477 U.S. at 607. In particular, the Court held that "[t]he statute covers those who receive the aid, but does not extend as far as those who benefit from it." *Id.* The Third Circuit has reiterated the Supreme Court's holding that Section "504 covers those who receive

the aid, but not those who merely have a beneficial relationship with entities receiving such assistance." *Smith v. NCAA*, 266 F.3d 152, 161 (3d Cir. 2001).

Here, the recipient of federal funds is the BCIU, not NLCI, thus ending the inquiry. Furthermore, even if Plaintiff argues that NLCI benefits from the services BCIU provides to its students, this argument must fail both legally and factually as:  (1) no liability attaches under Section 504 for beneficiaries of federal dollars; and (2) it is the students, such as J.M., and not NLCI, who are the actual beneficiaries of the IU's services given that as a private school, NLCI has no legal obligation to provide such services.  *See J., et al. v. Sch. Dist. of Philadelphia*, Civ. A. No. 06-3886, 2007 WL 1221216, at * 3-4 (E.D. Pa. Apr. 25, 2007); *see also St. Johnsbury Acad. v. D.H.*, 240 F.3d 163 (2d Cir. 2001); *Ullmo v. Gilmour Acad.*, 273 F.3d 671 (6th Cir. 2001).  Therefore, Count II of the Complaint must be dismissed.

### C.   Count III of the Complaint Which Seeks Attorneys Fees and Costs is Not a Separate Cause of Action

Finally, Count III of the Complaint, entitled "Attorney's Fees and Costs" seeks relief pursuant to 42 U.S.C. § 12205 (attorney's fees under the ADA) and 29 U.S.C. § 794a(b) (attorney's fees under the Rehabilitation Act) should Plaintiff be determined to be a prevailing party on Counts I and II.  However, regardless of whether Plaintiff ultimately prevails on her ADA and Rehabilitation Act claims, requests for attorney's fees, as a matter of law, do not constitute a separate cause of action upon which relief can be granted.  *Tunstall,* 820 F. 2d at 633.

Moreover, as set forth above, Plaintiff has failed to state a claim for relief under either Title III of the ADA (Count I) or Section 504 of the Rehabilitation Act (Count II).  Accordingly, Plaintiff cannot as a matter of law, be deemed a prevailing party under either theory of liability

and Count III of Plaintiff's Complaint regarding the award of attorney's fees and costs should likewise be dismissed.

### D. All Claims Purportedly on Behalf of M.M. Individually Must Be Dismissed For Failure to State a Claim

As noted earlier, while the caption of the Complaint states that the suit is brought by "J.M., a minor, through his parent, M.M." a review of the language of the Complaint appears to suggest in certain respects that J.M.'s mother, M.M., may also be attempting to bring claims in her own right against NLCI. *See* Compl. ¶ 1. Specifically, the "Introduction and Nature of the Complaint" states "J.M., a minor, through his parent, M.M., and M.M. on behalf of her son and on her own behalf" suggests M.M. is pursuing claims for herself. If the Court does not determine – as Defendant believes it should – that Counts I and II should be dismissed in their entirety, to the extent M.M. is herself seeking recovery from NLCI pursuant to either Title III of the ADA or Section 504 of the Rehabilitation Act both these claims fail as a matter of law, and any allegations and requests for relief tied to M.M. individually should be dismissed.

#### 1. M.M. Should Be Dismissed For Failure to Identify Herself in the Caption to the Complaint as Required by Federal Rule of Civil Procedure 10(a)

As an initial matter it must be pointed out that Rule 10(a) of the Federal Rules of Civil Procedure requires every complaint to include the name of each party to the action. Fed. R. Civ. P. 10(a) ("[t]he title of the complaint must name all the parties."). When confronted with pleadings that do not contain the name of a party in the caption to the complaint but appear to reference such party in the complaint itself, courts have relied on Rule 10(a) to dismiss those parties from the complaint. *See Klingler v. Yamaha Motor Corp.*, 738 F. Supp. 898, 910 (E.D. Pa. 1990). This is because such a defective pleading fails to provide the defendants, as well as the public, adequate notice of the identities of those parties raising claims against them. *Allen v. Nat'l R.R. Passenger Corp.*, No. Civ.A. 03-CV-3497, 2004 WL 2830629, at *3 (E.D. Pa. Dec. 7,

2004).  Therefore, M.M. should be dismissed as a plaintiff from this action for failure to identify

herself in the caption to the Complaint in violation of Federal Rule of Civil Procedure 10(a).

          2.      <u>Plaintiff Has Failed to State a Claim Under Either the ADA or the Rehabilitation Act</u>

Even if this Court allows M.M. to proceed as a plaintiff despite having not been named in

the caption of the Complaint, her claims under Title III of the ADA as well as Section 504 both

fail as a matter of law.

          *a)*      *Title III of the Americans with Disabilities Act*

Title III of the ADA provides in pertinent part:  "It shall be discriminatory to exclude or

otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or

other opportunities to an individual or entity because of the known disability of an individual

with whom the individual or entity is known to have a relationship."  42 U.S.C.

§ 12182(b)(1)(E).  Often referred to as "associational discrimination" the purpose of this

provision is to protect individuals who have been discriminated against because of their known

association with an individual with a disability.  *See U.S. v. Nobel Learning Communities, Inc.*,

676 F. Supp. 2d 379, 386-87 (E.D. Pa. 2009) (quoting 28 C.F.R. Part 36, App. B).  While M.M.

does not explicitly cite to this provision it appears from a smattering of language in the

Complaint that she is intending to rely on this section's protections to lodge her own claims

against NCLI.  *See* Compl. ¶ 46 (referencing M.M.'s exclusion from NCLI "because of her

relationship with J.M.").

Turning to the specific allegations of the Complaint, this Court's first task is to separate

the factual and legal elements of the claims, *Fowler*, 578 F.3d at 210, because "the basic

principle that a court must accept all allegations as true is inapplicable to either legal conclusions

or '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

14

statements.'"  *Argueta,* 643 F.3d at 72.  Here, M.M.'s specific claims against NCLI are that after

NCLI declined to readmit her son M.M.'s superiors stopped speaking to her, wrote her up for

calling in sick and warned her that she would not be permitted leave to deal with the child care

needs of J.M.  Compl. ¶ 36.  M.M. alleges that these actions "forced" her to "resign" from NLCI,

*id.* ¶ 37, causing her to lose child care for her son, *id.* ¶ 43, income for herself, *id.* ¶ 45, and be

denied, "the opportunity to select, participate in, and benefit from education at NLCI.  *Id.* ¶ 43.

> *M.M.'s Allegations Relate to Indirect Claims of Discrimination*

When assessing whether M.M. has sufficiently pled a claim of associational

discrimination under the ADA one must distinguish between those allegations which relate to

discrimination directed specifically against the plaintiff because of her association with a

disabled person from those indirect consequences the plaintiff may suffer as a result of that

relationship.  *Nobel Learning,* 676 F. Supp. 2d at 387-88.  This is necessary because "indirect

discrimination does not give rise to an associational discrimination claim."  *Id.* at 388.

More specifically, when analyzing claims nearly identical to the ones raised by M.M. in

the instant action, Judge McLaughlin granted NLCI's motion to dismiss finding that plaintiff

families' claims that they "were denied a full and equal opportunity to participate in or benefit

from the goods, services, facilities, privileges, advantages, or accommodations of NLC" and that

their alleged injuries of "the loss of child care and the attendant consequences for employment or

other opportunities" as well as "the loss or denial of the opportunity to select, participate in, or

benefit from the education offered by NLC's programs" all related to instances of indirect, rather

than direct, discrimination which are not cognizable under Title III of the ADA.  *Id.*  In analyzing

the available caselaw regarding whether Title III allows families to recover for indirect

consequences associated with a child's exclusion from an NLC school, the Court found that each

court which has addressed this issue described associational discrimination as discrimination "directed specifically against the non-disabled individual" "because of his or her association with a disabled person." *Id.* at 387. In contrast, those courts which have considered "whether indirect consequences give rise to an associational discrimination claims have held that Title III of the ADA does not protect against such injuries." *Id.* at 388. Therefore, the Court dismissed the families' claims. *Id.* at 388.

The exact same analysis applies here given that all of M.M.'s allegations are the result of the indirect consequences to M.M. of NCLI's determination not to readmit J.M. In particular, M.M.'s allegations that as a result of J.M.'s exclusion from NLCI, M.M. lost child care for her son, Compl. ¶ 43, and was personally denied, "the opportunity to select, participate in, and benefit from education at NLCI," *id.*, each go to the indirect consequences to M.M. occasioned by NLCI's decisions regarding J.M.. Such actions are not legally actionable under Title III of the ADA. *See Nobel Learning*, 676 F. Supp. 2d at 388 (concluding that "[a]lthough the Complaint alleges that families of disabled children suffered 'the loss or denial of the opportunity to select, participate in, or benefit from' NLC's programs, these allegations read like 'threadbare recitals of the elements' of an associational discrimination claim and are insufficient to withstand the defendant's motion to dismiss."). As the same court explained in a later decision affirming its original holding in *Nobel Learning*: "Although parents enjoy a derivative benefit in sending their children to daycare, and suffer a derivative harm due to the attendant consequences of a child's disenrollment or unenrollment, daycare is not a service for parents because children, not parents, partake in the daycare activities." *U.S. v. Nobel Learning Communities, Inc.*, Civ. A. No. 09-1818, 2010 WL 1047730, at *5 (E.D. Pa. Mar. 19, 2010).

*M.M.'s Claims of Direct Discrimination Fail as a Matter of Law*

Moreover, the only allegations that concern any actions taken by NLCI against M.M. are that, after NLCI refused to readmit J.M., her superiors stopped speaking to her, that she was written up for calling in sick and that she was warned that she would not be permitted leave to deal with the child care needs of J.M., Compl. ¶ 36, which M.M. alleges "forced" her to "resign" from NLCI. *Id.* ¶ 37. These claims, however, fail as a matter of law as the Third Circuit has explicitly recognized that "the association provision [of the ADA] does not obligate employers to accommodate the schedule of an employee with a disabled relative." *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009). In this regard, the Third Circuit drew a distinction between adverse actions "motivated by the known disability of an individual with whom an employee associates, as opposed to actions occasioned by the association." *Id.* (internal citations omitted). The need to take off from work to care of J.M., as alleged by M.M., falls squarely within the latter category. Accordingly, M.M.'s allegations that NCLI's refusal to allow her time off to attend to J.M. "forced" her to "resign", resulting in the loss of income, simply cannot form the basis of liability against NLCI under the ADA as NLCI's refusal – the only alleged *direct* action NLCI took against M.M. – was not motivated by J.M.'s disability.

In conclusion, each of M.M.'s allegations relate to the indirect consequences she suffered as a result of NLCI's decisions regarding J.M. Therefore, any claim in the Complaint by M.M. on her own behalf against NLCI must be dismissed.

> b)   *Section 504 of the Rehabilitation Act*

By its plain terms Section 504 of the Rehabilitation Act only applies to disabled persons. Specifically, Section 504 provides that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any

program or activity conducted by any Executive agency or by the United States Postal Service."

29 U.S.C. § 794.  There is no allegation that M.M. is herself disabled in any respect and therefore

there is no basis for her to seek recovery directly under Section 504.

Therefore, M.M. cannot state a claim under the Rehabilitation Act and all claims of M.M.

on her own behalf must accordingly be dismissed.

### E.      Plaintiff's Request for Punitive Damages under Title III of the ADA and the Rehabilitation Act Should be Dismissed

If the Court declines to dismiss Counts I and II in their entirety, as it should based on the

arguments set forth above, the Court must, nevertheless, strike Plaintiff's request for punitive

damages in both counts as it is now well established that punitive damages may not be awarded

in private suits brought under either Title III of the ADA or Section 504 of the Rehabilitation

Act.  42 U.S.C. § 2000a(3) (limiting Title III plaintiff's remedies, pursuant to 42 U.S.C. §

12188(a)(1), to preventative relief only); *Barnes v. Gorman*, 536 U.S. 181, 189 (2002) (holding

that punitive damages may not be awarded in private suits brought under the Rehabilitation Act).

### F.      Title II of the ADA Does Not Apply to NLCI

As a final matter, the Complaint oddly refers to "Title II" of the ADA, rather than Title

III of the ADA, in two places.  First, the Plaintiff alleges that the Court has jurisdiction over the

claims under Title II.  Compl. ¶ 2.  Second, the Complaint notes that Section 202 of Title II

prohibits discrimination by a place of public accommodation against individuals with disabilities.

*Id*. ¶ 7.  The inclusion of these references to Title II of the ADA is strange because they are

plainly inapplicable here.  More specifically, Title II of the ADA, provides in relevant part that

"no qualified individual with a disability shall, by reason of such disability, be excluded from

participation in or be denied the benefits of the services, programs, or activities of a public entity,

or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Plaintiff has not

alleged that NLCI is a public entity because it is not.  It is not a "[s]tate or local government," it is not a "department, agency, special purpose district, or other instrumentality of a State or States or local government" and it is not "the National Railroad Passenger Corporation, and any commuter authority," the only entities that, by the terms of the statute, can be sued for violations of Title II.  41 U.S.C. § 12131(1).

NLCI operates private schools.  Compl. ¶ 4.  "A private school is not a 'public entity' under ADA Title II unless such school also constitutes a department, agency, etc. of a state or local government."  *In re Allegheny Health,* 321 B.R. at 792.  There is no allegation in the Complaint, nor could there be, that NLCI's schools are a department or agency of a state or local government.  Accordingly, Title II of the ADA does not apply to NLCI, and any claim that Plaintiff purports to bring under Title II must be dismissed.

## IV.     CONCLUSION

For the foregoing reasons, NLCI respectfully requests that its Motion be granted and that this Court dismiss the Complaint in its entirety with prejudice.

Dated:  November 15, 2012                    Respectfully submitted,

                                            HANGLEY ARONCHICK SEGAL PUDLIN
                                            & SCHILLER

                                            By: /s/ Wendy Beetlestone
                                            Wendy Beetlestone (I.D. No. 71455)
                                            Alva C. Mather (I.D. No. 93881)
                                            wbeetlestone@hangley.com
                                            amather@hangley.com
                                            One Logan Square, 27th Floor
                                            Philadelphia, Pennsylvania  19103
                                            Telephone:  (215) 568-6200
                                            Facsimile:  (215) 568-0300

                                            *Attorneys for Defendant*

19

**<u>CERTIFICATE OF SERVICE</u>**

I, Wendy Beetlestone, hereby certify that on November 15, 2012, I caused a true copy of Defendant's  Motion to Dismiss and Memorandum of Law in Support of its Motion to be served via ECF on the following:

Ilene Young, Esquire
Ilene Young Law Offices
The Lofts at Oxford Valley, Suite 204
172 Middletown Boulevard
Langhorne, PA 19047

*Attorneys for Plaintiff*

/s/ Wendy Beetlestone
Wendy Beetlestone