IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J.M., et al., | : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | |
| NOBEL LEARNING COMMUNITIES, INC., | : | NO. 12-3882 |
| Defendant. | : | |

**MEMORANDUM**

L. Felipe Restrepo, U.S. District Court Judge                              September 10, 2013

Plaintiff J.M., a minor, and his mother, M.M., each allege that Defendant Nobel Learning Communities discriminated against them on the basis of J.M.'s disability, in violation of Section 504 of the Rehabilitation Act of 1973, and in violation of Title III of the Americans with Disabilities Act. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

On December 17, 2012, Defendant filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). On July 8, 2013, this case was transferred from the Honorable Gene E.K. Pratter. This Court heard argument on August 22, 2013. For the reasons that follow, Defendant's motion is granted.

**I.  STANDARD OF REVIEW**

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *See Bd. of Trs. of Bricklayers & Allied Craftsman Local 6 of N.J. Welfare Fund v. Wettlin Assocs.*, 237 F.3d 270, 272 (3d Cir. 2001). A court need not, however, credit "bald

assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Id.* at 555. Although the federal rules impose no probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Simply reciting the elements will not suffice. *Id.; see also Phillips*, 515 F.3d at 231.

## II. FACTS

J.M. is a minor child, born on May 21, 2007. (Am. Compl. ¶ 21.) Beginning when he was three months old, J.M. attended Chesterbrook Academy ("Chesterbrook Chalfont"), a private preschool in Chalfont, Pennsylvania. (*Id.* ¶ 21.) J.M.'s mother, M.M., was employed as a teacher at the same school. (*Id.* ¶ 23.) Chesterbrook Chalfont is part of a "network of day care centers and nursery, elementary and secondary private schools in numerous states" owned and operated by Nobel Learning Communities, Inc. ("NLCI" or "Defendant"). (*Id.* ¶ 4.)

Prior to his enrollment in the three-year old program at Chesterbook Chalfont, J.M. suffered significant personal loss and upheaval in his life, including the death of his father and a move, with his mother, to live with his grandmother. (*Id.* ¶ 24.) As a result of this upheaval, J.M. began to exhibit behavioral problems at school. (*Id.* ¶ 24-25.) In response to these behavioral

issues, M.M. asked Defendant to evaluate her son for special education support services, but Defendant did not do so. (*Id*. ¶ 26.) J.M., through the request of his mother, was eventually evaluated by the Bucks County Intermediate Unit ("IU"), J.M.'s Local Education Agency ("LEA") responsible for special education evaluation and services for preschool aged children. (*Id*. ¶ 12, 27-28.) The Bucks County IU provides services to special needs students as a requirement of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. (*Id*. ¶ 10-12, 16.)

The Bucks County IU conducted an evaluation of J.M. on May 23, 2011, June 13, 2011 and July 11, 2011. (*Id*. ¶ 28, 30.) As a result of this evaluation, J.M. was identified to receive special education services. (*Id*. ¶ 31, 35.) M.M. relayed this information to her superiors. (*Id*. ¶ 31.) Soon thereafter, on July 22, 2011, her superiors told her to remove her son from Chesterbook Chalfont. (*Id*.) It was understood at this point that M.M. was going to attempt to secure outside services for J.M., and once she did so, J.M. could reenroll in the school. (*Id*. ¶ 33.)

On August 25, 2011, the IU issued an evaluation determining J.M. eligible for a number of services. (*Id*. ¶ 35.) Soon thereafter, M.M. tried to re-enroll her son at Chesterbook Chalfont, but was told that he could instead enroll at another of Defendant's preschools, Chesterbrook Newtown. (*Id*. ¶ 36.) No modifications or programming were offered to him at this new school. (*Id*.) In September, 2011, the Bucks County IU determined that J.M. was best served at a regular education preschool, with some additional supportive accommodations, which would be provided at no cost to his preschool. (*Id*. ¶ 40.)

On October 13, 2011, M.M requested through her attorney that J.M. be re-admitted to Chesterbrook Chalfont, with the accommodations provided to him at no cost to Defendant. (*Id*. ¶

41.) Defendant refused to do so, and one day later M.M. was notified, through a note on J.M.'s cubby, that J.M. was no longer welcomed at Chesterbrook Newtown, either. (*Id.* ¶ 42.)

Following J.M.'s dismissal from Chesterbrook Newtown, M.M.'s superiors at Chesterbrook Chalfont stopped speaking with her, wrote her up for calling in sick, and warned her that she would not be permitted to leave to deal with the childcare needs occasioned by J.M.'s dismissal from Chesterbrook, thus forcing her to resign. (*Id.* ¶ 44-45.) J.M. began attending another school. (*Id.* ¶ 47.) He is now six years old. Hr'g Tr. 42:19. As a result of his age, he is neither eligible nor planning to return to Chesterbrook Newtown or Chesterbrook Chalfont. Hr'g Tr. 42-43.

### III. LEGAL ANALYSIS

Accepting the allegations of the Amended Complaint as true, J.M. and M.M. present plausible evidence that Defendant mistreated them. However, despite these credible allegations of mistreatment, the Amended Complaint does not allege a viable cause of action at this time, and thus, the action must be dismissed. As outlined below, Plaintiffs are granted leave to amend, in part.

> **a. Plaintiffs' Section 504 Claims Must be Dismissed for Failing to Adequately Demonstrate that Defendant is a Recipient of Federal Financial Assistance**

Both J.M. and M.M. first bring a claim against Defendant for a violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. To establish a violation of Section 504, J.M. "must demonstrate that: (1) [he] is a "handicapped individual"; (2) [he] is "otherwise qualified" for participation in the program; (3) the program receives "federal financial assistance"; and (4) [he] was "denied the benefits of" or "subject to discrimination" under the program. *K.R. v. Sch. Dist. of Phila.*, No. 06-2388, 2007 WL 2726236, at *2 (E.D. Pa. Sep. 14, 2007) (citing *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3d Cir. 1991)). When drawing every inference in his

4

favor, the Court finds that the Amended Complaint adequately pleads that J.M. was a child with a qualified disability, otherwise eligible to participate at each Chesterbrook school and that he was subject to discrimination. However, even with every inference drawn in favor of the Plaintiffs, that the Amended Complaint fails to plausibly establish that NLCI receives federal financial assistance, directly or indirectly, such that it is liable under Section 504. As such, both Plaintiffs' claims under Section 504 must be dismissed.[1]

### i. The Complaint Does Not Adequately Allege that Defendant is a Direct Recipient of Federal Financial Assistance

In recent years, district courts in the Third Circuit have found in certain circumstances that private schools may accept enough federal financial aid such that they may be considered recipients of federal assistance for Section 504 purposes. For example, participation in the National School Lunch and E-rate programs has attached Section 504 liability. *Russo v. Diocese of Greensburg*, No. 09-1169, 2010 WL 3656579, at *3 (W.D. Pa. Sep. 15, 2010); *Valesky v. Aquinas Academy*, No. 09-800, 2011 WL 4102584, at *10 (W.D. Pa. Sep. 14, 2011). However, when similar federal assistance is sufficiently small or attenuated, Section 504 liability does not attach. S*ee Marshall v. Sisters of Holy Family of Nazareth*, 399 F. Supp. 2d 597, 602-603 (E.D. Pa. 2005) ("The provision of a free lunch to a single student over the course of a year is de minimis—too little to alter my conclusion that the Academy does not receive federal financial assistance for purposes of the Rehabilitation Act."); s*ee also Buckley v. Archdiocese of Rockville Centre,* 992 F. Supp. 586, 589 n.5 (declining to extend Title IX protections to a Catholic high school based on the indirect provision of $1,600 of instructional materials). The Amended Complaint does not plausibly allege that NLCI is a recipient of these sorts of funds, and thus, liability cannot attach from them.

---

[1] The parties disagree over whether M.M. can plead an associational discrimination case under Section 504. Because neither claim can survive regardless, the Court declines to reach this issue.

### ii. The Complaint Does Not Adequately Allege that Defendant is an Indirect Recipient of Federal Financial Assistance

Because it provides little facts that would demonstrate that Defendant is a direct recipient of federal assistance, the Amended Complaint appears to instead argue that Defendant is an indirect recipient of federal financial assistance, such that federal liability still attaches. *See Grove City College v. Bell*, 465 U.S. 555, 56-70 (1984) (holding that an entity may receive federal financial assistance indirectly and still be considered a recipient within the meaning of the Rehabilitation Act if the grant maker intends the entity to receive the funding).

For its claim that NLCI is an indirect recipient of federal funds, the Amended Complaint states that NLCI is a recipient of federal funds solely because it "receive[s] 'fair share' supports under the [Individuals with Disabilities Education Act] and Pennsylvania Law through the Bucks County Intermediate Unit, which is, in part, federally funded." (Am. Compl. ¶ 15.) Essentially, Plaintiffs argue that if the Bucks County IU itself provides *any* direct services to disabled students at NLCI, then NLCI itself is considered an indirect recipient of federal funds. I disagree.

"Entities that receive federal assistance, whether directly or through an intermediary, are recipients within the meaning of [federal law]; entities that only benefit economically from federal assistance are not." *NCAA v. Smith*, 525 U.S. 459, 460. Further, "when determining whether an entity is an indirect recipient of federal financial assistance, courts should not only consider the intent of the grantmaker, but also the degree to which the entity is able to control decisions made with respect to the money, the most important decision being whether the grant money should be accepted at all." *J. v. Sch. Dist. of Phila.*, No. 06-3886, 2007 WL 1221216, at *5 (E.D. Pa. Apr. 25, 2007) (citing *Smith v. NCAA*, 266 F.3d 152, 161 (3d Cir. 2001)).

In specific scenarios, district courts in this Circuit have found that a private school's involvement with disability programs can attach liability. For example, in *P.N. v. Greco*, 282 F.

6

Supp. 2d 221 (D.N.J. 2003), the District Court found that a private school, which accepted government paid placements of special needs students at a level such that "tuition of a substantial number of [the school's] students [was] paid by boards of education," was considered a recipient of federal funds under the Act. *Id.* at 241 ("There can be little doubt that [the private school] is a recipient of federal funds for the purposes of § 504: the fact that it receives federal funds indirectly as a result of placements by [a board of education] and other public authorities is of no moment.") (internal citations omitted). The Court was persuaded that the private school in that case was receiving a significant amount of federal money, even if it passed through the student to the school. Nothing of the sort is alleged here.[2]

In essence, Plaintiffs are alleging that if NLCI benefits at all from the presence of the Bucks County IU—presumably because the IU provides services that either expands the number of students that may attend NLCI or by paying for services that NLCI might pay for itself—federal liability attaches. Given the Supreme Court's holding that entities that "only benefit economically from federal assistance" are not considered recipients of federal funds for purposes of attaching civil rights liability, *NCAA v. Smith*, 525 U.S. at 460, this is an unsupportable argument. Further, Plaintiffs' claim that Defendant can simply refuse these services is not plausibly supported by the Amended Complaint, as such a blanket refusal would likely expose them to other federal liability. *See U.S. v. Nobel Learning Cmtys., Inc.*, 676 F. Supp. 2d 379, 380 (E.D. Pa. 2009) (denying motion to dismiss of ADA claim against NLCI for failing to make reasonable modifications with regards to enrollment practices in its pre-schools.)

---

[2] Conversely, in *J. v. Sch. Dist. of Phila.*, No. 06-3886, 2007 WL 1221216, (E.D. Pa. Apr. 25, 2007), the Court found that a private third party that provided classroom services for special needs students through a contract with the School District of Philadelphia was not a recipient of federal funds, because the Plaintiff "pleaded no facts suggesting [a private provider] has a relationship with the School District enabling it to control the decisions made with respect to the District's federal funding." *Id.* at *5.

Thus, finding that the Complaint does not plausibly allege that NLCI is a recipient of federal financial assistance, directly or indirectly, the Court must dismiss both claims under Section 504. At argument, Plaintiffs asked to file an amended complaint that outlines these facts in greater detail. Accordingly, to the extent that Plaintiffs can plead, with specificity and in good faith pursuant to Rule 11, facts that adequately demonstrate Defendant's receipt of federal financial assistance, Plaintiffs may re-plead within fourteen days of this Memorandum.

### b. M.M.'s Claim for Employment Discrimination is Not Viable Under Title III of the ADA

M.M. also asks, pursuant to the discrimination that resulted from her association with her son, that this Court declare that she was illegally discriminated against and order her reinstatement to her position with NLCI. M.M. has effectively alleged an associational discrimination case under Title I of the ADA, the section of the Act dealing with employment opportunities for disabled persons. 42 U.S.C. § 12112(b)(4) (defining discrimination as "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association").

Employment discrimination directed towards a non-disabled person because of her association with a disabled person can create a cause of action under Title I of the ADA. *See Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 511 (3d Cir. 2009) ("a decision motivated by unfounded stereotypes or assumptions about the need to care for a disabled person may be fairly construed as because of the disability") (internal quotations omitted); *Huggard v. Crown Bank*, No. 11-6194, 2012 WL 529548, at *2-3 (D.N.J. Feb. 17, 2012). But, those cases also identify the fatal flaw in M.M's claim, in that each were brought under Title I of the ADA, which governs equal employment opportunities for the disabled. *Erdman*, 582 F.3d at 510; *Huggard,* 2012 WL

529548 at *3. Unlike those claims, M.M.'s claim was brought under Title III of the Act, governing public accommodations.

When discussing this issue at argument, it became apparent for the first time that M.M. has, in fact, also brought a separate Title I claim, along with a claim under the Pennsylvania Human Relations Act, each of which is currently being investigated by the Pennsylvania Human Relations Commission. Hr'g. Tr. 48-50. Despite this, Plaintiff still believes that under the rubric of Title III of the ADA, this Court may order her reinstatement. I disagree.

While there may be certain circumstances where an employee can sue her employer under Title III, Title III does not apply to what is, effectively, a claim for discriminatory termination. *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 122 (3d Cir. 1998) ("Title III was not intended to govern disability discrimination in the context of employment"); s*ee also Motzkin v. Trs. of Boston Univ.*, 938 F. Supp. 983, 996 (D. Mass. 1996) ("The legislative intent is so clear from the language of Titles I and III that one need not go beyond that language to conclude that employment discrimination is the exclusive province of Title I."). Without her claim being brought under Title I, which itself carries its own pleading requirements and administrative remedies, *Reddinger v. Hosp. Cent. Servs., Inc.*, 4 F. Supp. 2d 405, 409 (E.D. Pa. 1998), remedies which she is still apparently pursuing at this time, this Court must dismiss M.M.'s claim under Title III of the ADA, with prejudice.

    c.  **J.M.'s Claims Under Title III of the ADA Appear Moot**

In his ADA count of the Amended Complaint, J.M. asks this Court to require his reinstatement to school. (Am. Compl. 10). Because of this demand, the parties spent considerable time in their briefs discussing the availability of reinstatement as a remedy under Title III of the ADA. However, regardless of whether reinstatement is an available remedy here, J.M. is now six

9

years-old. As explained at oral argument, he is neither eligible nor intends to re-enroll in his preschool, and counsel could not state with clarity that J.M. actually seeks to attend an NLCI elementary school. As such, the Court finds the matter moot, but will grant leave for Plaintiff to provide clarity.

"Article III requires that a plaintiff's claim be live not just when he first brings the suit, but throughout the entire litigation, and once the controversy ceases to exist the court must dismiss the case for lack of jurisdiction." *Walter v. Se. Pa. Transp. Auth.*, No. 05-418, 2007 WL 966227, at \*4 (E.D. Pa. Mar. 28, 2007) (quoting *Lusardi v. Xerox Corp.*, 975 F.2d 964, 974 (3d Cir. 1992). At argument it became clear to this Court that that there are significant doubts that this remains a live claim. Plaintiff's counsel could not say that J.M. would actually attend one of the two elementary schools that NLCI runs in the Philadelphia metro area, neither of which apparently are close to his home, and neither of which he has any apparent relationship with. Hr'g Tr. 51-52. Without a desire for reinstatement, it appears that J.M. (along with M.M.) actually seeks a declaration that he was discriminated against by Defendant. Hr'g Tr. 58:12-21. District courts are not in a position to make such declarations without a live claim for remedy. *See Walter*, 2007 WL 966227 at \*4. At this point, such a claim appears to this Court to have ended.

Finding that J.M.'s claim appears no longer live, and that the relief he seeks is moot, this count of the Amended Complaint is dismissed as moot. However, the Court notes that a significant amount of time has passed between the filing of the Amended Complaint and this decision, which may explain the lack of clarity about J.M.'s desires. As such, to the extent that J.M. can plead, with specificity and in good faith pursuant to Rule 11, that he actually desires to be reinstated and attend an NLCI school, despite the apparent inconvenience it would cause for

him, the Court will allow him to amend. The Court withholds judgment about whether reinstatement is viable under the ADA until such a demand becomes an issue.

### d. Plaintiffs' Cause of Action for Attorney Fees is Improperly Pleaded

The Court must also dismiss Count III of the Amended Complaint, a separately pleaded count for attorney's fees. Claims for attorney's fees in a civil rights action should not be pleaded as individual causes of action. *See, e.g., Hughes v. Halbach & Braun Indus., Ltd.*, 10 F. Supp. 2d 491, 501 (W.D. Pa. 1998); *Benjamin v. East Orange Police Dept.*, --- F. Supp. 2d ----, No. 12-774, 2013 WL 1314418 (D.N.J. Mar. 28, 2013). Plaintiffs state that they pleaded claims for fees only as part of the overall Section 504 and ADA claims, both of which will be dismissed, as noted above. Thus, should Plaintiffs amend the Complaint, pursuant to this Memorandum, they may also amend to include a claim for fees, but do so solely in their *ad damnum* clause, not as a separate cause of action.

## IV. CONCLUSION

Finding that each count of the Amended Complaint must dismissed, the motion is granted. Should Plaintiffs file an Amended Complaint consistent with this memorandum, the Clerk will reopen the matter.

An implementing Order follows.